# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant MARK C. PAGANO**
**United States Army, Appellant**

ARMY 20180439

Headquarters, U.S. Army Fires Center of Excellence and Fort Sill
Robert L. Shuck and J. Harper Cook, Military Judges
Colonel Maureen A. Kohn, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany D. Pond, JA; Major Kyle C. Sprague, JA; Captain Loraima Morciglio, JA (on brief and reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Dustin B. Myrie, JA; Captain Marc J. Emond (on brief).

3 June 2020

------------------------------------------------------------------
MEMORANDUM OPINION ON RECONSIDERATION
------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Judge:

On appeal, appellant asserts his convictions for communicating indecent language are legally and factually insufficient and dilatory post-trial processing by the government warrants relief.[1] For the reasons set forth below, we agree with both claims. Appellant also claims he received ineffective assistance of counsel because his trial defense counsel did not introduce certain character evidence during the pre-sentencing proceedings.[2] As we explain below, we do not find appellant's trial

---

[1] We sua sponte reconsider our 2 June 2020 decision in this case and do not set aside appellant's sentence. *United States v. Pagano*, ARMY 20180439, 2020 CCA LEXIS___(Army Ct. Crim. App. 2 Jun. 20).

[2] Appellant raised this matter personally pursuant to *United States v. Grostefon*, 12

(continued . . .)

defense counsel were deficient. In our decretal paragraph, we dismiss appellant's convictions for communicating indecent language, reassess appellant's sentence, and grant relief for the government's post-trial delay.[3]

## BACKGROUND

### *Appellant's Offenses*

Appellant and the victim, JP, were in a dating relationship. JP had a daughter, VH, who was two years-old. On one occasion, while appellant and JP were arguing in appellant's apartment, appellant referred to VH as JP's "nigger baby." On cross-examination, JP testified it was possible she also called appellant names during this argument. On another occasion, while arguing in appellant's apartment, appellant referred to JP as a "nigger-lover" and called VH and her biological father, SH, "niggers."

On a third occasion, JP went to appellant's apartment to ask him to have drinks with her. Appellant declined and continued to play videogames while sitting on the couch. JP playfully poked him in his ribs saying, "let's just go out and have some fun." Appellant got angry, picked JP up, threw her off the couch, and started choking her. Appellant placed both his hands around JP's throat and squeezed until she could no longer breathe. Eventually, appellant let go and called JP "pathetic" as she crawled away.

After these incidents, appellant and JP reconciled and got married. A couple of weeks after they got married, while JP and appellant were having sex, JP told appellant "it was hurting and that [she] couldn't keep going." Appellant got upset and replied, "good, it is like I am raping you then."

---

(. . . continued)
 M.J. 431 (C.M.A. 1982). Appellant also claims his counsel were deficient during the merits phase of his court-martial for failure to present evidence relevant to the charges of communicating indecent language. As we dismiss these specifications for legal and factual insufficiency, it is unnecessary to discuss appellant's claim of ineffective assistance of counsel during the merits.

[3] An enlisted panel sitting as a general-court-martial convicted appellant, contrary to his pleas, of one specification of aggravated assault with a means and force likely to produce death or grievous bodily harm and three specifications of communicating indecent language, in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934. The panel sentenced appellant to a bad-conduct discharge, confinement for twelve months, and total forfeiture of all pay and allowances. After a post-trial Article 39(a) session, the convening authority approved the adjudged sentence.

*Pre-Sentencing Proceedings*

During the pre-sentencing proceedings, JP's step-father testified for the government regarding the impact appellant's convictions had on JP and their family. JP provided an unsworn statement describing the depressive impact appellant's convictions had on her. The government introduced into evidence appellant's Enlisted Record Brief (ERB) depicting his seventeen years of service and two combat deployments. The defense pre-sentencing case consisted of an unsworn statement by appellant and a few family photographs.

On appeal, appellant claims his defense counsel, Major (MAJ) RM and Captain (CPT) LM were deficient because they failed to call five character witnesses during the pre-sentencing proceedings. Appellant argues, "[t]he testimony of [these] five African-American friends would have explained the circumstances surrounding the offense and would have put in context the use of racial slurs towards JP in a burst of anger, as opposed to [appellant] being racist."

We ordered affidavits from MAJ RM and CPT LM regarding appellant's claims. In their affidavits, defense counsel stated the five pre-sentencing witnesses were prepared to testify regarding appellant's "[p]ositive relationship with his daughters, character for racial tolerance, and character for peacefulness." MAJ RM and CPT LM explained, however, they ultimately decided to not call these witnesses "to avoid opening evidentiary doors" that would have allowed the government to introduce "a litany of specific acts of prior misconduct. . . ." by appellant.

*Post-Trial Processing of Appellant's Case*

After the trial's adjournment, the government took 193 days to transcribe the 850-page record of trial (ROT). Shortly after receiving the ROT, the defense counsel returned the ROT to the government because of an incomplete verbatim transcript. A few minutes of audio recording was missing due to a malfunctioning courtroom microphone. Approximately a month after the defense counsel returned the ROT, the military judge convened a post-trial Article 39(a), UCMJ, hearing regarding the incomplete verbatim transcript.

Within a week of the post-trial hearing, the incomplete verbatim transcript issue was resolved and the military judge was able to authenticate the ROT. The authenticated ROT and the Staff Judge Advocate's Recommendation (SJAR) were served on appellant approximately nine months after trial, and two weeks prior to appellant completing his sentence to confinement. Seven days later, appellant submitted his clemency matters asserting the government committed a speedy post-trial processing violation, but he did not lodge a specific request for speedy post-trial processing. One week later, the convening authority took action. Overall, the government took 288 days to process appellant's case from trial adjournment to convening authority action.

3

## LAW AND DISCUSSION

### A. *Legal and Factual Sufficiency of Appellant's Convictions for Communicating Indecent Language*

Appellant contends his convictions of three specifications of communicating indecent language are legally and factually insufficient because the language is not "indecent." Although appellant's language is reprehensible, we find it is not criminally "indecent" as defined by statute in the narrow context of his case.

We review questions of legal and factual sufficiency *de novo*. UCMJ art. 66(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of appellant's guilt beyond a reasonable doubt." *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) (citation omitted). We take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

Appellant's convictions for communicating indecent language required the government to prove the following elements:

(1) appellant communicated orally or in writing to another person certain language;

(2) that such language was indecent; and

(3) that, under the circumstances, the conduct was prejudicial to good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces.

*Manual for Courts-Martial, United States* (2012 ed.) [*MCM*], pt. IV., ¶ 89.b.; *see also* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, ¶ 3-89-1.c. (9 Oct. 2014).

Indecent language is defined as language, "which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought. Language is indecent if it tends to reasonably corrupt morals or incite libidinous thoughts. The language must violate community standards." *MCM*, pt. IV, ¶ 89.c; *see also United States v. Green*, 68 M.J. 266, 269 (C.A.A.F. 2010); *United States v. Negron*, 60 M.J. 136, 142 (C.A.A.F. 2004).

The decency of the language at issue must be evaluated in light of the circumstances under which it was communicated. *See United States v. Brinson*, 49 M.J. 360, 363-64 (C.A.A.F. 1998) (holding "[a]ppellant's use of coarse language was clearly intended to express his rage, not any sexual desire or moral dissolution."); *see also United States v. Guerrero*, 33 M.J. 295, 298 (C.M.A. 1992) (noting significance of circumstances in which conduct occurred for purposes of determining whether a service disorder occurred), *cert. denied*, 502 U.S. 1096, 117 L. Ed. 2d 418, 112 S. Ct. 1173 (1992). We turn now to the circumstances under which appellant communicated the language in the three specifications.

*1. Specifications 1 and 2 of Additional Charge V[4]*

In Specification 1 of Additional Charge V, appellant was convicted for referring to VH as "Your nigger-baby." In Specification 2 of Additional Charge V, appellant was convicted for referring to JP as a "nigger-lover" and SH and VH as "niggers." Appellant communicated these statements to JP, his girlfriend at the time, during mutual arguments while inside his home. Only appellant and JP were present for these mutual arguments. As appellant's language was only communicated to JP during mutually private arguments, we do not find his language was intended to incite lust.

Although the language was not of a nature to incite lust, appellant's language could still be "indecent" if it was "grossly offensive to modesty, decency, or propriety, or shock[ing] to the moral sense, because of its vulgar, filthy, or disgusting nature." *MCM*, pt. IV, ¶ 89.c. Under different circumstances, appellant's racist epithets could be deemed grossly offensive and constitute the criminal offense of communicating indecent language. Under the specific circumstances, however, we do not find appellant's statements, made to JP during mutually private arguments while inside his home, meet the legal definition of "indecent."

---

[4] Additional Charge V was renumbered and appears as Additional Charge III on the charge sheet. For clarity, we will refer to this charge as Additional Charge V, as it appears on the promulgating order.

As to the first argument, appellant and JP were arguing and yelling at each other. At trial, JP could not recall the nature of their disagreement but testified both parties were angry. Appellant's statement came at the end of the argument. During direct examination, JP testified that after the argument appellant apologized to her via text message and he stated "[h]e only said [the statement] to make [her] angry. . . ." JP "[f]elt that [appellant] was being honest and that maybe it was something he said out of anger. . . ." During cross-examination, JP conceded she may have also called appellant names during their argument. As to the second argument, appellant and JP got into a disagreement regarding VH's biological father, SH, paying child support. JP testified appellant was "very angry" during the argument while making the statements regarding JP, VH, and SH.

Although we in no way condone the use of racist epithets, the record demonstrates appellant's statements were "clearly calculated or intended to express his rage, not any sexual desire or moral dissolution." *Brinson*, 49 M.J. at 364.[5] "Community standards allow greater leeway for such intimate communications before they rise to the level of 'indecent,' subject to criminal sanction under Article 134, UCMJ." *United States v. Reyes*, 2019 CCA LEXIS 10, at *6 (Army Ct. Crim. App. 7 Jan. 19) (mem. op.) (noting "[t]he relationship between the parties and the privacy of the communication matter," when determining whether language is "grossly offensive."). Accordingly, we are not ourselves convinced beyond a reasonable doubt that appellant's language was "indecent" under community standards when his statements were communicated during mutually private arguments with his girlfriend while in his home.

### 2. *Specification 4 of Additional Charge V*

In Specification 4 of Additional Charge V, appellant was convicted for communicating to JP, "Good, it's like I'm raping you." Appellant's statement is inappropriate and disgusting but it is not "indecent" as defined in the *MCM*.

After recently getting married, appellant communicated his statement to JP while they were having sex in response to JP stating, "[i]t was hurting and that [she] couldn't keep going." JP testified that after appellant's statement she told him, "[i]t hurt too much and [she] needed to stop." JP testified appellant got upset. JP stated

---

[5] In *Brinson*, appellant shouted to the law enforcement officer arresting him, "fuck you, you white mother fucker;" "get me the fuck off the ground; it's cold; take these fucking chains off of me, I'm going to walk to the fucking car;" "white mother fuckers;" and "you can't treat me like niggers." *Id*. at 363. Our Superior Court found this language was not indecent under the circumstances because "appellant's use of coarse language was clearly calculated or intended to express his rage, not any sexual desire or moral dissolution." *Id*. at 364.

that she "[t]ried to continue" but told appellant, again, it was "too painful." Appellant replied "[h]e was almost done" and JP testified "he finished."

In this context, the circumstances do not support a finding that appellant made his statement with an intent to incite libidinous thoughts. Instead, the evidence supports appellant was upset because JP did not want to continue engaging in sex and his statement was an expression of his anger. *See, e.g., Negron*, 60 M.J. 136.[6] Notably, appellant did not act on his statement by using force consistent with the act of rape.[7] As such, his communication was of a personal nature, between a married couple engaging in sex, with a history of arguing and saying mean things to each other. Under these circumstances, we are doubtful that a reasonable member of the community would be shocked or grossly offended by appellant's statement. *See, e.g., United States v. Johnson*, 2009 CCA LEXIS 298, *14-15 (N.M. Ct. Crim. App. 25 Aug. 2009).[8]

*B. Ineffective Assistance of Counsel*

We review appellant's claim of ineffective assistance of counsel *de novo*. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015); *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012). The test for ineffective assistance of counsel requires appellant to prove his counsel's performance was deficient and the deficiency resulted in prejudice. *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

---

[6] In *Negron*, appellant wrote a letter to a bank after it rejected his loan. In the letter appellant wrote, "[m]aybe when I get back to the states, I'll walk in your bank and apply for a blowjob, a nice dick sucking, I bet y'all are good at that, right?" *Id*. at 137. Our Superior Court held that under the circumstances in which appellant wrote the letter, his statements were not "calculated to corrupt morals or excite libidinous thoughts." *Id*. at 143. Instead, the circumstances established only that appellant was "angry and frustrated" and he "resorted to using improper language to express his feelings." *Id*.

[7] Appellant was charged with sexually assaulting JP on this occasion, but was acquitted of this offense.

[8] In *Johnson*, appellant texted his girlfriend, "I hope sumthin happens and ur [fxxxxxx] kidney stones shoot up through ur [fxxxxxx] head and blow ur brains out u [fxxxxxx] bitch I u [sic] rot in in hell." *Id*. at *3. The court found appellant's statement was not "indecent" as it was "[a]n exchange between a couple in the midst of an acrimonious break-up," which would not shock or grossly offend community standards. *Id*. at *15.

7

Under the first *Strickland* prong, appellant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. To decide this issue, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. The presumption of competence is rebutted by "a showing of specific errors made by defense counsel" that were "unreasonable under prevailing professional norms." *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001) (citations omitted).

Appellant contends his counsel were deficient for failing to call five pre-sentencing witnesses to testify regarding appellant's character for racial tolerance and peacefulness.[9] We do not find appellant's counsel were deficient. Appellant's trial defense counsel made strategic and tactical decisions to avoid introducing evidence that would have permitted the government to introduce highly prejudicial rebuttal evidence. *See United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993) (Counsel are presumed competent and we will not second-guess the trial defense counsel's strategic or tactical decisions).

Specifically, if trial defense counsel introduced evidence of appellant's alleged character for racial tolerance and peacefulness, the government could have rebutted this evidence with testimony from JP and appellant's ex-wife, MP. JP and MP could each testify to several occasions when appellant assaulted them and used racial epithets. Notably prior to trial, appellant's defense counsel had successfully moved to exclude the government introduction of this evidence under Military Rule of Evidence (Mil. R. Evid.) 404(b).[10] Further, defense counsel were aware of three other female witnesses who were ready to testify for the government in rebuttal regarding appellant's violent nature. One of these rebuttal witnesses was prepared to testify that appellant pushed her down the stairs when she was pregnant.

---

[9] Pursuant to *United States v. Ginn*, 47 M.J. 236, 244-45 (C.A.A.F. 1997), a fact finding hearing is not necessary because appellant's claim and defense counsels' affidavits do not conflict. Rather, defense counsels' affidavits acknowledge the existence of the five pre-sentencing witnesses. Defense counsel affidavits, however, elaborate on the evidentiary doors these witnesses would have opened for the government to introduce highly prejudicial rebuttal evidence against appellant.

[10] Pursuant to Mil. R. Evid. 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Mil. R. Evid. 404(b)(2).

Defense counsel aptly described their strategy during the pre-sentencing proceedings as "walk[ing] an evidentiary tightrope. . . ."[11] Defense counsel stated they discussed and explained their pre-sentencing strategic decisions with appellant. After calculating the aforementioned risks of introducing testimony from the five pre-sentencing witnesses, the defense counsel pursued a sound trial strategy. Ironically, if defense counsel presented the five pre-sentencing witnesses, such a trial decision could have been highly prejudicial to appellant. Accordingly, appellant falls far short of meeting his evidentiary burden to establish that his defense counsel were ineffective. *See United States v. Garcia*, 59 M.J. 447, 450 (C.A.A.F. 2004).

### C. Dilatory Post-Trial Processing

We review *de novo* whether appellant has been denied his due process right to a speedy post-trial review. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). A presumption of unreasonable post-trial delay exists when the convening authority fails to take action within 120 days of completion of trial. *Id.* at 142. In *Toohey v. United States*, our Superior Court adopted the following four-factor balancing test from *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972), which we employ when a presumption of unreasonable post-trial delay exists, to determine whether the post-trial delay constitutes a due process violation: "(1) length of the delay; (2) reasons for the delay; (3) the appellant's assertion of his right to a timely appeal; and (4) prejudice to the appellant." 60 M.J. 100, 102 (C.A.A.F. 2004). In assessing the fourth factor of prejudice, we consider three sub-factors: "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired." *Moreno*, 63 M.J. at 138-39 (quoting *Rheuark v. Shaw*, 628 F.2d 297, 303 n.8 (5th Cir. 1980)).

In appellant's case, the first factor weighs in favor of appellant, as 288 days is presumptively unreasonable. In the addendum, the staff judge advocate acknowledged the post-trial processing time in this case exceeded the 120-day guideline outlined in *Moreno*. The addendum does not provide any explanation for the delay. However, the SJA did provide a memorandum for record entitled "Post-

---

[11] As to the defense pre-sentencing case, appellant's counsel also explained in their affidavits that the best evidence regarding rehabilitative potential and duty performance would have been testimony from appellant's former platoon leader that appellant "performed his duties as expected." Defense counsel determined presenting evidence of appellant's relatively "unimpressive" duty performance was not worth risking the government presenting rebuttal evidence that appellant was drunk on duty a few weeks prior to trial.

Trial Processing," which attributed the delay to the "[h]igh volume of trials, additional tasks, duties, and leadership responsibilities of the court reporters within the office, such as our Senior Court Reporter serving as [the] acting Chief Paralegal [noncommissioned officer]. . . ."

The SJA's vague excuse that the court reporters were essentially understaffed and overworked is contradicted by the military judge's statement during the post-trial Article 39(a), UCMJ hearing regarding the processing of appellant's record. The military judge stated:

> I will also note that there has been a lack of government urgency with regards to this record of trial. So, I will promptly authenticate it once I receive the verbatim portion of this post-trial [Article] 39(a) session, but I just received this record of trial this week, which is [seven] months after the trial concluded. I will let the appellate courts grant the appropriate relief for that dilatory post-trial processing, especially considering there are three court reporters at Fort Sill, two of which are senior [noncommissioned officers].

On appeal, the government has not offered any additional justification for the appellate delay in this case, nor does the record disclose any. Accordingly, the second factor weighs in favor of appellant.[12]

The third factor weighs against appellant as he never specifically asserted his right to speedy post-trial processing.

Regarding the fourth factor, appellant alleges he was prejudiced by the delay because he suffered oppressive incarceration. Whether or not an appellant suffered oppressive incarceration pending appeal is directly related to the success or failure of an appellant's substantive appeal. *Moreno*, 63 M.J. at 139. "If the substantive grounds for the appeal are not meritorious, an appellant is in no worse position due to the delay, even though it may have been excessive." *Id.* (citation omitted). "However, if an appellant's substantive appeal is meritorious and the appellant has been incarcerated during the appeal period, the incarceration may have been oppressive." *Id.*

In appellant's case, he was served the authenticated record of trial two weeks prior to his release date from confinement, thus depriving him of the opportunity to request any meaningful clemency from the convening authority. By the time the

---

[12] The government concedes in its brief that the first two *Barker* factors weigh in appellant's favor.

convening authority took action in appellant's case, he had already completed his sentence to confinement. Appellant's substantive appeal is meritorious in that we find three of his convictions for communicating indecent language legally and factually insufficient. *See Moreno*, 63 M.J. at 139 n.15 (noting this factor weighs heavily against the government if the incarceration relates to a finding that is reversed for factual insufficiency). As we discuss in the decretal paragraph, based on the dismissal of appellant's convictions for communicating indecent language, we reassess appellant's sentence to a bad-conduct discharge, six months of confinement, and total forfeiture of all pay and allowances. Thus, appellant served a sentence to confinement beyond what his convictions warranted.[13]

In balancing the *Barker* and *Moreno* factors, we find the unreasonable length of the delay, the lack of legitimate reasons advanced by the government for the delay, and the specific prejudice suffered by appellant as a result of oppressive incarceration all weigh against the government. Appellant's failure to assert his right to timely post-trial review weighs against him, but only slightly. Therefore, balancing the *Barker* and *Moreno* factors leads us to conclude the government deprived appellant of his due process right to speedy review and appeal, and we grant relief by reducing by one month appellant's reassessed sentence to confinement.

## CONCLUSION

On consideration of the entire record, the findings of guilty as to Specifications 1, 2, and 4 of Additional Charge V are SET ASIDE and DISMISSED. The remaining findings of guilty are AFFIRMED.

In accordance with the principles set forth in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986), we have reassessed appellant's sentence to a bad-conduct discharge, six months of confinement, and total forfeiture of all pay and allowances. We further reduce appellant's sentence by one month to remedy the government's dilatory post-trial processing.

---

[13] We note appellant did not present evidence regarding the two other sub-factors for establishing prejudice under *Moreno*: particularized anxiety or concern, and impairment of appellant's ability to present a defense at a rehearing. 63 M.J. at 138-39 (citations omitted). The third sub-factor is not relevant in appellant's case because a rehearing is not authorized on the dismissed findings of guilty. As for the second sub-factor, we find the extent of appellant's oppressive incarceration so extensive that a showing of a particularized anxiety or concern is not necessary to tip the scale in appellant's favor.

PAGANO—ARMY 20180439

Accordingly, we AFFIRM only so much of the sentence as provides for a bad-conduct discharge, five months of confinement, and total forfeiture of all pay and allowances.

All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision and the reassessed sentence are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge BURTON and Judge RODRIGUEZ concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

12